IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM J. GUTHRIE, et al.,<br><br>Defendants. | Case No. 19-CV-314-JWB |

### **MEMORANDUM & ORDER**

This matter is before the court on a motion for summary judgment filed by Plaintiff General Star Indemnity Company ("General Star"). (Doc. 64). General Star seeks a declaratory judgment concerning a malpractice insurance policy for which Defendant William J. Guthrie is the named beneficiary. (Doc. 2). Other matters on file include two motions in limine and a motion for leave to file a sur-reply. (Docs. 74, 75, & 96). For the reasons stated herein, the court grants in part and denies in part General Star's motion for summary judgment and denies the other motions.

**I.  Facts**

Defendant William J. Guthrie is a licensed physician employed by the Wagoner Community Hospital in Wagoner, Oklahoma. (Doc. 64 at ¶ 1). On May 16, 2018, General Star Indemnity Company issued a policy for physicians and surgeons professional liability insurance coverage, and Guthrie was the named insured for that policy. (Doc. 64-1 at 1). Wagoner Community Hospital purchased the policy through Rich & Cartmill , Inc., on Guthrie's behalf, and the hospital remained the certificate holder of that policy. (Doc. 71-8 at ¶ 3). In January 2019, Guthrie signed an application to renew his policy, which the Wagoner Community Hospital submitted, and General Star subsequently issued a renewed policy with Guthrie as the named insured. (Doc. 64 at ¶¶ 9-11). According to Guthrie, he never received a copy of the policies and

1

did not read their terms until after this action began.  (Doc. 70-1 at 4, 8; Doc. 71-8 at ¶ 3).[1]

In August 2017, Guthrie provided treatment to Aletha C. Wood ("Ms. Wood") at the Wagoner Community Hospital, but she ultimately passed away.  (Doc. 64 at ¶ 15).  On April 16, 2019, Defendant Richard M. Wood ("Mr. Wood"), acting in his capacity as the administrator of Ms. Wood's estate, filed a lawsuit against Guthrie in Oklahoma state court (the "underlying lawsuit") alleging malpractice.  (Doc. 64 at ¶ 16; Doc. 64-5).  Guthrie received service of the summons and complaint in the underlying lawsuit on April 27, 2019.  (Doc. 64 at ¶ 17).  On May 13, 2019, Guthrie called Scott Selman ("Selman") at Rich & Cartmill.  (Doc. 64 at ¶ 19; Doc. 64-2 at 1; Doc. 71-1 at 17-18; Doc. 71-8 at ¶ 5).  According to Guthrie, Selman instructed him to bring the summons and complaint to Rich & Cartmill, which Guthrie did on May 20, 2019.  (Doc. 71-8 at ¶ 6).  On June 6, 2019, General Star received notice of the underlying lawsuit from Rich & Cartmill.  (Doc. 64 at ¶ 21).  On September 13, 2019, General Star filed this lawsuit seeking declaratory judgment that it owes Guthrie no duty under the insurance policy.  (Doc. 2).

There are two insurance policies at issue in this case.  The first was issued on May 16, 2018, with effective policy dates from May 20, 2018 through May 20, 2019 (the "2018-2019 policy").  (Doc. 64-1 at 1).  The second was issued on May 20, 2019 with effective policy dates from May 20, 2019 through May 20, 2020 (the "2019-2020 policy").  (Doc. 64-4 at 1).  Both policies had a "retroactive date" of May 20, 2017.  (Doc. 64-1 at 1; Doc. 64-4 at 1).  Numerous policy terms are relevant to this action.

The declarations page of the 2018-2019 policy notifies the insured that "[t]his is a Claims-

---

[1] General Star seeks leave to file a sur-reply regarding when and how Guthrie may have received the policies.  (Doc. 96).  This motion is denied.  For the reasons explained in the court's analysis, this issue need not be resolved as it does not involve an issue of material fact.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Made Policy." (Doc. 64-1 at 1). The second page of the policy provides two notices concerning the policy. (Doc. 64-1 at 2.) First, it notifies the insured that the policy is a "claims made and reported" policy, and second, it instructs the insured regarding "What to do in case of a claim." *Id.* This section instructs an insured to "immediately, however no later than within ten (10) days, report the details to either your agent/broker or to [General Star]." *Id.* Below General Star's contact information is the sentence "Note: Failure to promptly report a claim could jeopardize your insurance." *Id.* Other relevant terms include:

- "Claim" means . . . [a] Suit.

- "Damages" means sums that the insured becomes legally obligated to pay. Damages do not include: . . . punitive damages, exemplary damages or damages representing a multiple of compensatory amounts.

- "Policy Period" means the period beginning at 12:01 A.M. Standard Time on the inception date of coverage specified in the Declarations, issued to the named insured, to 12:01 A.M. Standard Time on the expiration date specified in the Declarations, unless the policy is terminated at an earlier date.

- "Suit" means a civil action which requests money damages because of bodily injury or property damage to which this policy applies.

- Notice of Claim or Potential Claim – If a claim or potential claim covered by this policy is made against the insured, the insured shall deliver to the Company within ten (10) days after the date of receipt of the claim or potential claim, every demand, notice, summons, notice of intent to sue, complaint, any document the insured or the insured's representative receives relating to a claim.

*Id.* at §§ X(5), X(7)(c), X(11), X(16), XI(21).

**II.    Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored, information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317. The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III.    Analysis**

General Star argues that it is entitled to summary judgment because the uncontroverted material facts establish that the conditions precedent to coverage were not satisfied under either of the policies. General Star also argues that Guthrie is not entitled to coverage for punitive damages sought by Mr. Wood. Defendants argue that Guthrie is entitled to coverage under at least one of the policies. Defendants alternatively argue that even if Guthrie did not strictly comply with the terms of the policy, coverage should still apply because General Star has not been prejudiced in its ability to defend. The parties agree that Oklahoma law applies to the policies' interpretation.

Under Oklahoma law related to insurance contracts, the terms of the parties' contract, if unambiguous, clear and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intentions of the parties as it existed at the time of the contract. *American Cas. Co. of Reading, Pa. v. Fed. Deposit Ins. Corp*., 958 F.2d 324, 326 (10th Cir. 1992) (citing *Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 376 (Okla. 1991)).  Every insurance contract shall be construed according to the entirety of its terms and conditions.  *Bituminous Cas. Corp. v. Cowen Constr., Inc*., 55 P.3d 1030, 1033 (Okla. 2002).  The parties are bound by the terms of their agreement and the court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed.  *Id*.  The interpretation of an insurance contract, including whether provisions of the contract are ambiguous, is determined by the court as a matter of law.  *Dodson*, 812 P.2d at 376.

### A. General Star has not established that it owes no duty to Guthrie under the 2018-2019 policy

The first question is whether Guthrie is entitled to coverage under the 2018-2019 policy. This policy was effective from May 20, 2018, through May 20, 2019.  The first page of the policy states:

> This professional liability policy provides coverage on a claims-made and reported basis.  The coverage provided by this policy is limited to only those claims which arise from professional services rendered entirely after the retroactive date stated in the declarations and which are first made against the insured and reported to us during the policy period or any applicable extended reporting period . . . .

(Doc. 64-1 at 2) (emphasis added).  And Section II of the policy states:

> Subject to the terms of this policy, this insurance applies to a claim or potential claim only if:
>
> 1. The professional services giving rise to such claim or potential claim are rendered:
>
>    a.   In the Coverage Territory . . .

   b. To a patient of the named insured;
   c. Within the insured's profession; and
   d. Entirely on or after the retroactive date specified for the named insured and before the end of the policy period; and

2. On the effective date of the policy period of the first professional liability policy that we issue to the named insured, the named insured did not have knowledge of facts or circumstances that would cause a reasonable person to believe such claim or potential claim would be made for professional services; and

3. Such claim or potential claim is reported to us in writing within ten (10) days of receipt by the named insured of a written notice of a claim; and

   a. The named insured's written report of a claim is received by us prior to the expiration date of the policy period or the expiration of the Extended Reporting Period, if one applies; or
   b. The named insured's written report of a potential claim is received by us prior to the expiration date of the policy period.

*Id*. at 4-5.

The parties vigorously dispute the meaning and applicability of this language. The court begins by analyzing whether the underlying lawsuit is the type of claim to which coverage applies, and then turns to whether the claim was properly and timely reported to General Star.

### 1. The underlying lawsuit is a claim that qualifies for coverage

The court first finds that the underlying lawsuit is a claim that qualifies for coverage under the 2018-2019 policy. The policy defines a "claim" as a "suit," and it defines a "suit" as "a civil action which requests money damages because of bodily injury or property damage to which this policy applies." (Doc. 64-1 at 12-13). The underlying lawsuit meets the definition of a "suit" because it is a civil action for money damages because of bodily injury from professional services Guthrie provided to Ms. Wood. Thus, a "claim," as that term is defined in the policy, was made against Guthrie.

The types of claims that are covered by the policy are set forth in Section II(1)(a)-(d) which is quoted above. Here, the court finds that this claim qualifies for coverage because the

professional services giving rise to this claim were: (1) rendered in the coverage territory; (2) to one of Guthrie's patients; (3) within Guthrie's profession; and (4) occurred in August 2017, which is after the retroactive date and before the end of the 2018-2019 policy period. Accordingly, the underlying lawsuit is the type of claim that is covered under the 2018-2019 policy.

### 2. Guthrie's reporting obligations

General Star agrees that the underlying lawsuit constitutes a "claim" as that term is defined in the policy. However, General Star argues that the 2018-2019 policy contains a reporting requirement that is a condition precedent to coverage, i.e., the underlying lawsuit must be reported to General Star during the 10-day reporting period. General Star contends that the deadline for reporting the underlying lawsuit to General Star was May 7, 2019, but that General Star was not notified until June 6, 2019, which was 17 days after the expiration of the 2018-2019 policy. Guthrie contends that he gave proper notice on May 13, 2019 when he telephoned Selman of Rich & Cartmill and told him about the lawsuit.

#### a. Ambiguous policy terms

First, the court finds that the policy is ambiguous as to how Guthrie is supposed to give notice, i.e., who Guthrie is required to report the claim to and how the report should be communicated. Section II(3) of the policy provides that insurance applies to a claim only if: "[s]uch claim or potential claim is *reported to us in writing* within ten (10) days of receipt by the named insured of a written notice of a claim." (Doc. 64-1 at 5). This indicates that the claim must be reported to General Star, and in the form of a written report.

However, this provision is inconsistent with the language on the first page of the policy. The first page of the policy includes the following paragraph with bolded header:

**WHAT TO DO IN CASE OF A CLAIM**

7

> In the event you directly or indirectly become involved in a professional liability claim, you should immediately, however no later than within ten (10) days, *report the details to either your agent/broker or to* [General Star].

(Doc. 61-4 at 2) (emphasis added). This indicates that merely reporting *details* of the claim is sufficient. It also states that the details may be reported to the insured's *agent/broker*.

These instructions are contradictory. One tells Guthrie he may report "the details" of a claim to his broker with no specification about oral versus written communication, while the other tells Guthrie he must provide General Star with a written report and/or documentation. This creates ambiguity in Guthrie's obligations.

It strikes the court as rational to expect that an insured would follow instructions provided on the first page of the policy under a bold heading that states: "what to do in case of a claim."[2] Given that conclusion, the court will interpret the policy in Guthrie's favor and find that Guthrie's obligation to report the claim could be fulfilled by reporting the claim to Selman, his insurance broker at Rich & Cartmill, in either oral or written fashion.[3] *See Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 912 P.2d 861, 865 (Okla. 1996) (stating that "ambiguities are construed most strongly against the insurer."); *see also BonBeck Parker, LLC v. Travelers Indemnity Co. of Am.*,

---

[2] Guthrie argues without authority that he cannot be held to the terms of the policy because he never had notice of those terms. (Doc. 71 at 5-6). The court does not find this persuasive. Guthrie's hospital employer purchased the policy for him. It is not General Star's fault that Guthrie's employer apparently failed to ensure he received a copy of the policy from which he was intended to benefit. Moreover, it is uncontroverted that Guthrie's agent, Rich & Cartmill, received a copy of the policies.

[3] General Star filed a motion in limine regarding whether Rich & Cartmill was an agent of Guthrie or of General Star. (Doc. 75). "The purpose of a motion in limine is to aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted *evidence*, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd,* 402 F. App'x 337 (10th Cir. 2010) (emphasis added) (quotation and citation omitted). The determination of an agency relationship is generally a question of fact, though in certain instances it may be suitable for resolution by the court as a matter of law. *See Thornton v. Ford Motor Co.*, 297 P.3d 413, 418 (Okla. Civ. App. 2012). Either way, it is not a suitable topic for a motion in limine, which is simply "a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

14 F.4th 1169, 1179 (10th Cir. 2021) (noting that one of the basic principles of contract interpretation is "that a more specific provision controls the effect of more general provisions").

Second, the court finds that the policy is not ambiguous as to when notice must be provided. The introductory paragraph on the first page provides that the policy provides coverage for claims "which are first made against the insured and reported to us *during the policy period* . . . ." (Doc. 64-1 at 2). However, the policy must be construed according to the entirety of its terms and conditions. The 10-day reporting window is cited throughout the policy, including in the "what to do in case of a claim" paragraph, as well as in a footer at the bottom of every page. And requiring notice within 10-days is not inconsistent with also requiring notice before the end of the policy period. Accordingly, the court finds that Guthrie was required to report a claim within 10 days of receipt of a written notice of a claim.

### b. Guthrie failed to give timely notice

Having interpreted the policy terms, the court next finds that the uncontroverted material facts establish that Guthrie failed to provide timely notice. Guthrie received notice of the claim when he was served with the summons and complaint on April 27, 2019. This means that Guthrie had to report the claim, in either oral or written fashion, to either his broker or to General Star by May 7, 2019. However, Guthrie did not report the claim until May 13, 2019, when he telephoned Selman of Rich & Cartmill and told him about the lawsuit. Accordingly, the court finds that Guthrie failed to give timely notice of the claim under the terms of the 2018-2019 policy.

### 3. Whether the 10-day notice rule must be strictly construed

Because Guthrie's notice fell outside the 10-day window required by General Star, the next issue is whether this time limit must be strictly construed. The parties dispute the applicability of Oklahoma's "notice-prejudice" rule, which "prevents an insurance company from avoiding

liability on the basis of untimely notice or submission of proof unless the company proves it has been substantially prejudiced by the delay." *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 n.3 (10th Cir. 1999) (describing California version of the rule). Defendants contend that the notice-prejudice rule applies because notice was still given before the policy term expired. General Star argues that the reporting provision is a condition precedent to coverage and the provision must be strictly construed and that the notice-prejudice rule does not apply to "claims made" or "claims made and reported" insurance policies.

To understand the impact of late notice, it is important to briefly outline the differences between the types of insurance policies and what notice requirements each may contain. Most insurance policies can generally be categorized as "occurrence" or "claims made" policies. An occurrence policy provides coverage for events which occur during the term of the policy, regardless of when notice is given to the insurer. *Chandler v. Valentine*, 330 P.3d 1209, 1212 (Okla. 2014). Notice provisions contained in occurrence policies are typically included to "aid the insurer in investigating, settling, and defending claims, not as a definition of coverage." *Id*. (quotation omitted).

On the other hand, claims made[4] policies typically condition coverage on two requirements: (1) the claim must be made against the insured during the policy period; and (2) the

---

[4] A pure claims made policy will provide coverage for any claim asserted against the insured during the policy period. *See Prodigy Commc'ns. Corp. v. Agric. Excess & Surplus Ins. Co*., 288 S.W.3d 374, 379 n.7 (Tex. 2009). Whether reporting to the insurer is also a condition of coverage depends on the terms of the specific policy. *Id.* If a claims made policy contains a notice requirement, as is common for these types of policies, it is technically a "claims made and reported" policy. The only distinction between a pure claims made policy and a claims made and reported policy is that "the former requires only that a claim be made within the policy period, the latter also requires that the claim be reported to the insurance company within the policy period." *Id.* Most courts, including the Oklahoma Supreme Court, fail to recognize a distinction between the two types of policies and "simply speak in broad terms of 'claims made' policies." *Id*. In fact, the 2018-2019 policy refers to itself as both a "claims made" and a "claims made and reported" policy. Here, the policy is a claims made and reported policy with an additional, stricter notification window, but the court will follow the Oklahoma courts and refer to it as a "claims made" policy.

claim must be reported to the insurer during that same policy period. *See id.* In *Chandler*, the Oklahoma Supreme Court explained:

> In a 'claims made' policy, the notice is the event that invokes coverage under the policy. *Clear notice of a claim or occurrence during the policy period is crucial*, because allowing actual notice beyond the policy period would 'constitute an unbargained for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.' Claims made policies are often a more economical way to provide coverage for risks like professional responsibility, because the notice requirements allow an insurer to 'close its books' on a policy at the expiration date and thus 'attain a level of predictability unattainable under standard occurrence policies.'

*Id*. (emphasis added) (quoting *State ex rel. Crawford v. Indemnity Underwriters Ins. Co.*, 943 P.2d 1099, 1100 (Okla. Ct. App. 1997)).

However, some claims made policies contain an additional, stricter requirement to notify the insurer of a claim "as soon as practicable" or within a stated period. *TRT Dev. Co., Inc. v. ACE Am. Ins. Co.*, 566 F. Supp. 3d 118, 125 (D.N.H. 2021). "As with an occurrence policy, the purpose of this type of notice requirement in a claims-made policy is to maximize the insurer's opportunity to investigate and defend legal actions." *Id*.

Oklahoma courts have focused on the differences between occurrence and claims made policies when determining whether proof of prejudice is required to deny coverage based on late notice. When an occurrence policy is at issue, courts have applied the notice-prejudice rule and held that the insurer must prove prejudice to deny coverage based on the insured's untimely notice of a claim. *See, e.g.*, *Continental Cas. Co. v. Beaty*, 455 P.2d 684, 687-89 (Okla. 1969). This is so because stipulated notice windows within these policies are "written for the benefit of the company"—they allow the insurance company time to examine the cause and the extent of alleged damage, protect itself against fraudulent claims, and gather data to determine a reasonable settlement. *Dixon v. State Mut. Ins. Co.*, 126 P. 794, 796 (Okla. 1912).

11

By contrast, a showing of prejudice is not required to deny coverage under typical claims made policies (requiring that the claim be made and reported during the policy period) where the insurer does not receive notice of a claim during the policy period. *See Ass'n of Cnty. Comm'rs of Okla. v. Nat'l Am. Ins. Co.*, 116 P.3d 206, 211 (Okla. Civ. App. 2005). This is so because "the notice requirements allow an insurer to 'close its books' on a policy at the expiration date and thus attain a level of predictability unattainable under standard occurrence policies." *Crawford*, 943 P.2d at 1100; *see also TRT Dev. Co., Inc.*, 566 F. Supp. 3d at 125 (explaining that "prejudice is presumed to exist in these circumstances because requiring an insurer to provide coverage for a claim reported after the end of a claims-made policy period effectively expands the policy's grant of coverage").

Although the policy at issue here is a claims made policy, it is distinguishable from the cases cited by General Star. In those cases, the insured did not give notice of a claim until after the policy period had expired, i.e., *after* the insurer had "closed its books." "[A]llowing actual notice beyond the policy period would constitute an unbargained for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Chandler*, 330 P.3d at 1212; *see also TRT Dev. Co., Inc.*, 566 F. Supp. 3d at 125 (explaining that requiring proof of prejudice when notice of a claim is given outside the policy period "would defeat the fundamental concept on which claims-made policies are premised because it would frustrate the primary purpose of insuring claims rather than occurrences").

But here, the policy requires notice of a claim always be given within 10 days of receipt, regardless of when the policy period expires. The purpose of this type of requirement is "to maximize the insurer's opportunity to investigate and defend legal actions." *TRT Dev. Co., Inc.*,

12

566 F. Supp. 3d at 125. This is the same rationale the Oklahoma courts have relied on when applying the notice-prejudice rule to occurrence policies. Moreover, allowing notice beyond the 2018-2019 policy's 10-day reporting window would not frustrate the purpose of insuring claims rather than occurrences. Unlike in *Crawford*, General Star had yet to "close its books" on the 2018-2019 policy because the policy period was still in effect when Guthrie gave notice. Thus, "excusing late notice in this case would not rewrite a fundamental term of the insurance contract and expand the scope of coverage." *Id*. at 126.

And while the Oklahoma courts have not addressed claims made policies with 10-day reporting windows, several courts in other jurisdictions have held "that the insurer must prove prejudice when an insured notifies it of a claim within a claims-made policy period but fails to provide notice within the time specified in a notice-of-claim provision." *Id*. (citing cases and holding that the notice-prejudice rule applies when an insured reports a claim under a claims made policy during the policy period but fails to provide notice within the time specified in a notice-of-claim provision); *see also Fin. Indust. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877, 879 (Tex. 2009) (holding that an insurer must show prejudice to deny payment on a claims made policy, when the denial is based upon the insured's breach of the policy's prompt-notice provision, but the notice is nevertheless given within the policy's coverage period); *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co*., 288 S.W.3d 374, 381-82 (Tex. 2009) (holding that insurer could not deny coverage based on untimely notice under provision requiring notice of claim be given "as soon as practicable" when notice of the claim was provided before the policy period expired and insurer was not prejudiced by the delay). The court finds that the Oklahoma Supreme Court would similarly conclude that the insurer must show prejudice to deny coverage on a claims made policy

when notice was untimely under the policy's reporting window but was given within the policy's coverage window.

Because Guthrie's notice was untimely under the policy's reporting window but was given within the policy's coverage window, the court finds that the notice-prejudice rule applies.[5] Accordingly, General Star must demonstrate that it was prejudiced by Guthrie's untimely notice. It has not done so. Summary judgment is thus inappropriate.[6]

### B. Punitive Damages

General Star also seeks a determination from the court that punitive damages are not covered by Guthrie's policy. (Doc. 64 at 13-14). Neither Guthrie nor Wood respond to General Star's argument. (*See* Docs. 70 & 71). The plain language of the 2018-2019 policy excludes punitive damages from its definition of damages: "'Damages' means sums that the insured becomes legally obligated to pay. Damages do not include: . . . punitive damages, exemplary damages or damages representing a multiple of compensatory amounts." (Doc. 64-1 at § X(7)(c)). Summary judgment is thus appropriate on General Star's punitive damages argument.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Doc. 64) is GRANTED IN PART and DENIED IN PART. It is granted to the extent that General Star is

---

[5] The court also notes that the policy does not include an explicit ground for forfeiture based on lack of notice. The policy merely includes one sentence that "[f]ailure to promptly report a claim could jeopardize your insurance." (Doc. 64-1 at 2). "Could jeopardize" is a far cry from "will invalidate" or "shall negate" and does not "expressly [make] a ground of forfeiture" out of late notice. *See Beaty*, 455 P.2d at 688; *see also Dang*, 175 F.3d at 1189 (describing "an additional element to the Oklahoma version of the [notice-prejudice] rule [that] the insured's failure to provide proof of loss within the policy limits [does] not operate to forfeit his claim [if] the policy notice provisions provided time limits for furnishing notice and proof of claim, [but] did not impose a forfeiture for failure to comply with the time limits").

[6] The court further finds that there is no coverage under the 2019-2020 policy because the underlying lawsuit was not a claim made during the 2019-2020 policy period, which, like the 2018-2019 policy, limits coverage to claims made during the policy period. (*See* Doc. 64-4 at 4-5). Thus, the scope of trial will be limited to the 2018-2019 policy.

entitled to a ruling that Guthrie is not entitled to coverage under the 2019-2020 policy and a ruling that punitive damages are not covered under the 2018-2019 policy. It is denied in all other respects.

IT IS FURTHER ORDERED that General Star's motion for leave to file sur-reply (Doc. 96) is DENIED AS MOOT.

IT IS FURTHER ORDERED that General Star's motions in limine (Docs. 74 & 75) are DENIED.

IT IS SO ORDERED. Dated this 2nd day of September, 2022.

                                              *s/ John W. Broomes*
                                              JOHN W. BROOMES
                                              UNITED STATES DISTRICT JUDGE